452 So.2d 329 (1984)
Mary Ann Gaudin, Divorced Wife of Gustave Joseph MARA
v.
Gustave Joseph MARA.
No. CA-1324.
Court of Appeal of Louisiana, Fourth Circuit.
June 6, 1984.
Rehearing Denied July 24, 1984.
*330 Bernard M. Plaia, Jr., Metairie, for plaintiff-appellant.
Kern A. Reese, New Orleans, for defendant-appellee.
Before BARRY, AUGUSTINE and CIACCIO, JJ.
AUGUSTINE, Judge.
Plaintiff-appellant Mary Ann Gaudin and defendant-appellee Gustave Mara were married on June 1, 1968. At Mara's instance, the marriage was declared null on April 25, 1975 because Gaudin's previous marriage to John P. Buglione, Jr. had never *331 been dissolved. Gaudin did not contest the suit for nullity, but allowed a default judgment to be entered against her.
On July 12, 1981, after several years of unfruitful out-of-court dispute concerning the disposition of property acquired during the second marriage, Gaudin filed this suit for partition by licitation of certain immovable property. Gaudin alleged that since the property was acquired prior to the nullification of her second marriage, she is entitled to an undivided one-half interest as the putative spouse in community. Defendant Mara answered that the prior judgment which nullified the marriage nullified the community of acquets and gains as well. Following trial on the merits, the court rendered judgment in Mara's favor, finding Gaudin to be in bad faith and therefore not entitled to the civil effects of marriage as a putative wife. The sole ground stated for this conclusion was that:
"Mary Ann Gaudin is estopped from raising the putative effects of the marriage.
On April 21, 1975 in proceeding # 584-039 Mrs. Mara allowed a judgment of default to be entered against her.
If she had any putative rights, it seems to this court, that she should have proceeded forward under those rights at that time". Reasons for Judgment.
Now on appeal, Gaudin contends that the trial court erred in holding her estopped to assert her putative status because neither the petition for annulment nor the judgment of nullity addressed the question of her good or bad faith in entering the second marriage.
Appellant's arguments have merit. Whether the judgment below was based upon estoppelcollateral estoppel or res judicata, neither is a proper ground for decision in this case. Louisiana does not recognize the doctrine of collateral estoppel. Welch v. Crown Zellerbach Corp., 359 So.2d 154 (La.1978). Nor should the doctrine of res judicata have prevented a decision on the meritsthe present suit for partition and the former action for nullity are not identical, either as to cause or the thing demanded. La.C.C. 2287. Welch v. Crown Zellerbach Corp., supra. Moreover, Mara did not specially plead the exception of res judicata, and the trial court should not have raised the objection on its own. La.C.C.P. art. 927.
Appellate courts have a constitutional duty to review questions of fact as well as of law, La. Const. of 1974, Art. 5, § 10(B)[1], and where a finding of fact is interdicted because of legal error in the fact finding process and the record is otherwise complete, the appellate court should, if it can, render judgment on the record. Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707 (La.1980); American Machinery Movers, Inc. v. Continental Container Service, Inc., 436 So.2d 1289 (La. App. 4th Cir.1983). Accordingly, we shall proceed to discuss the merits of this case de novo.
Concerning the focal question before uswhether Gaudin entered her marriage to Mara in good faiththe trial record reveals the following undisputed facts:
Several years after Gaudin's previous marriage to John P. Buglione in 1960, she became romantically involved with Gustave Mara. The couple decided to get married, and so Gaudin sought a divorce from Buglione in the courts of Alabama. On May 10, 1968, she drove with Mara to Birmingham where, with $350.00 given to her by the defendant, she entered the law office of K.C. Edwards, whose practice was largely devoted to divorces of this kind. There she signed various documents, all purporting to be the vehicles of a legal Alabama divorce. After completing the paperwork, Gaudin paid Edwards the required fee and, in return, received what appeared to be a divorce decree issued by Hon. Bob Moore, Jr. of the Circuit Court of Winston County, Alabama. The decree is impressed with the Seal of the Circuit Court of Winston *332 County; it is stamped, "Filed 10th day of May 1968," and it contains the signature of the Register of the Court.
Armed with a copy of this ostensibly official divorce judgment, Gaudin returned to Mara's Birmingham hotel room and showed the document to him. Apparently satisfied with these papers, the couple drove back to New Orleans. They were married shortly afterward on June 1, 1968.
In August 1972, Mara and Gaudin acquired a new family home at 4968 Copernicus Street. It is this property which plaintiff Gaudin seeks to have partitioned.
In April of 1973, Mara attempted to adopt Gaudin's child by her previous marriage, and finding it necessary to obtain another certified copy of her divorce judgment, he requested this document from the Circuit Court of Winston County, Alabama. Joyce Martin, Register of the Court, responded with a Certificate of Search of Records, stating that the divorce proceeding, Buglione v. Buglione, No. 8823, had never been filed. This notice is dated April 23, 1973.
Despite official notice that her first marriage had never been dissolved, Gaudin continued to live with Mara as his wife until approximately one year later, when she left the family home.
On October 10, 1974, Mara filed an action to nullify the marriage, and on April 25, 1975 he obtained a judgment by default.
In September 1975, appellant married her present husband, Warren Gaudin.
The single issue raised by the foregoing facts is whether Gaudin married Mara in the good faith belief that her previous marriage to Buglione had been dissolved by a valid judgment of divorce.
Normally, a spouse who seeks putative status enjoys a presumption that she married in good faith. Good faith, in the context of a putative marriage is an honest and reasonable belief that the marriage was valid and that no legal impediment to it existed. Funderburk v. Funderburk, 214 La. 717, 38 So.2d 502 (1949); Succession of Chavis, 211 La. 313, 29 So.2d 860 (1947); Succession of Marinoni, 183 La. 776, 164 So. 797 (1935). The presumption of good faith is not available, however, to a spouse who has been shown to be previously married and neither widowed nor divorced. To the contrary, such a spouse must bear the burden of proving his or her good faith in contracting the allegedly putative marriage. Gathright v. Smith, 368 So.2d 679 (La.1979). Whether a spouse enters an invalid marriage in good faith is a question that is largely answerable by the circumstances surrounding the marriage.
Since Gaudin's marriage to Mara was annulled on the ground that her previous marriage to Buglione was never dissolved, appellant now assumes the burden to prove her good faith in marrying Mara; that is, she must prove her reasonable belief that the divorce decree given to her by the Birmingham attorney was valid.
Gaudin insists that she had no cause to doubt the genuineness of her divorce papers until late April 1973, when she and Mara received official notice that the divorce judgment was not on file. Gaudin explained that the Alabama lawyer had defrauded her into believing in the validity of the divorce judgment which he had issued to her, and that she was an easy mark for his trickery and deceit, having only a high school education and no knowledge of divorce law.
Given the undisputed facts of this case, we are satisfied that Gaudin was indeed an unwitting victim of deceit by her Alabama attorney, and that Gaudin entered her marriage to Mara in the belief that her divorce from Buglione was valid. The documents which evidence that divorce were apparently valid, even by the defendant's reckoning, and it is unreasonable to suppose that anyone would willingly pay $350.00 for a divorce knowing that it would be without legal effect. We are impressed, also, with defendant Mara's insistence that he never had cause to question the validity of the divorce, and since we have no reason to think that Gaudin had more knowledge of the Alabama attorney's deceitful practices *333 than Mara did, we would find them both to be good faith victims of fraud.
In connection with this, we note a federal court opinion which sets out in minute detail the unconscionable divorce fraud scheme to which Gaudin briefly referred in her testimony. She called it "the biggest scandal in Alabama for a while". Indeed it was. See United States v. Edwards, 458 F.2d 875 (5 Cir.1972).
Having found that Mary Ann Gaudin, at the time of her marriage to Gustave Mara, entertained the good faith and reasonable belief that her divorce from John P. Buglione, Jr. was final and valid, and therefore, that there existed no impediment to her marriage, we conclude that Gaudin is entitled to putative status.
Accordingly, the judgment appealed from is reversed, and the property which is the subject of this dispute is hereby deemed to form part of the putative community which existed between Gustave Mara and his former putative wife, Mary Ann Gaudin. The case is remanded for further proceedings consistent with this opinion.
REVERSED and REMANDED.
NOTES
[1] Art. 5, § 10(B) provides: "Except as limited to questions of law by this constitution, ... appellate jurisdiction of a court of appeal extends to law and facts. In criminal cases its appellate jurisdiction extends only to question of law." (As amended by Act No. 843, § 1 of 1980).